Stevens, J.
This appeal presents questions of whether there is substantial evidence to sustain the findings of fact and whether the proof as a matter of law supports the determination.
Petitioner, an honorably discharged Air Force veteran, was appointed a patrolman with the Transit Police Department of The New York City Transit Authority (the Authority) on June 1, 1966. On November 29, 1971, charges of misconduct and medical incompetence were preferred against him, the specification of charges reading:
“ (a) On September 18, 1971 at about 8:00 P.M., during an interview by your superior, you pounded a radiator with your clenched fist, banged your head against a wall; struck a table with your clenched fist and behaved in a violent manner.
“ (b) On the above date, you went out on patrol with an unloaded revolver and you left your off-duty revolver in your locker.
“ (c) Since September 20, 1971, you have been unable to perform your duties due to a non-service connected illness.
“ Since October 4,1971, you have not been medically qualified to perform any duties for the Authority.”
As stated by the Authority, the bases for the charges were the incidents of September 18, 1971. The controversy stemmed from the fact that certain garnishees against petitioner’s salary were served upon the Authority. Petitioner alleges that although he was never served with any summons, certain judgments had been entered against him. Petitioner’s version of the incidents is that when he appeared as directed on September 18, 1971, he attempted to explain that he was retaining counsel to vacate the judgments. However, his superior officer refused to listen and he was told “ to pay up [his] * * * debts ”, that the Authority was not going to be burdened with paper work. Petitioner admits that he was angered by the refusal to listen and that he did pound the table and the wall in an attempt to get his superior’s attention, acts he realizes were not discreet. He denies banging his head against the wall. With regard to the unloaded gun he testified that he always unloads his service revolver while getting dressed for the job. He did so on this occasion and put the shells in his locker. However, he was running late and in his haste forgot to reload the gun.
*347 An employee disciplinary hearing was held and the hearing officer sustained the charges of misconduct and medical incompetence. The determination of medical incompetence was predicated on the testimony of the Authority’s psychiatric consultant who found petitioner to be suffering from a deep-seated personality disorder, “ characterized by hypersensitivity, outbursts of rage and verbal aggressiveness ”.
The consultant reached this conclusion without administering any tests and on the basis of an interview at which he found petitioner without delusions or hallucinations, oriented as to time, place and person, and able to discuss the events in question coherently and relevantly. The examination took place on October 1,1971, for which the consultant had been given a report of the occurrence. From such report it appeared that the physical and neurological examinations of petitioner were unremarkable. The consultant’s conclusion rested upon petitioner’s outburst on September 18, which he termed a rage reaction, stating, inter alia., ‘1 as far as we are concerned, there is no cause for a rage whether it’s just or unjust. ’ ’ The examination according to the doctor took “ the usual 50 minutes ”, although it was not clocked, and, according to petitioner, lasted somewhat in excess of 20 minutes.
Petitioner’s psychiatrist, who apparently conducted a more extensive examination, found petitioner friendly and gregarious and not hostile or aggressive. ■ The medical examination conducted at St. Clare’s Hospital found petitioner normal. In his opinion, petitioner was mentally able to perform without disability. There was no examination conducted by an impartial doctor or panel.
The recommendation of the hearing officer that petitioner be discharged was approved by Wilbur B. McLaren, the executive officer for labor relations and personnel, who discharged petitioner.
On this appeal, petitioner, a member of the New York City Employees’ Retirement System, urges that that agency is the only agency legally authorized to determine if he, as a member, is unable to perform his duties due to a service-connected or nonservice related disability; that Mr. McLaren acted in excess of his authority; and, that petitioner’s dismissal for misconduct and medical incompetence was illegal and improper. In any *348 event, petitioner asserts the penalty was too harsh and too severe.
Respondent asserts there is substantial evidence to support the determination which should not be disturbed.
There is no merit to petitioner’s contention that his discharge was illegal because Mr. McLaren acted in excess of his authority.
Under subdivision 2 of section 1201 of the Public Authorities Law, the chairman of the Authority is ‘ ‘ empowered to delegate any one or more of such functions or powers [i.e., executive and administrative functions and powers of the Authority], including, without limitation, that of appointment, discipline and removal of officers and employees, to one or more executive officers appointed by the board.” Pursuant to the power conferred, the chairman of the Authority by Executive Order TA-1, dated March 1, 1968, vested disciplinary power, including the power to hire and fire, in the executive officer for labor relations and personnel. By order of June 16, 1969, Wilbur B. McLaren was appointed to that office. Thus, Mr. McLaren did not exceed his authority.
Analysis of the testimony given by the psychiatric consultant for the Authority, which testimony formed the basis for petitioner’s dismissal, persuades us that the rather perfunctory examination by the consultant was totally inadequate and of insufficient reliability to support his conclusions. Consequently, on the whole record there was lacking substantial evidence to sustain the determination (Matter of Stork Rest. v. Boland, 282 N. Y. 256, 275; 23 Carmody-Wait, 2d, New York Practice, § 145:20).
Mindful, however, of the Authority’s responsibility for the public safety, and aware of the harm which could result if in fact there does exist a condition of mental instability, we conclude that the Authority should be afforded a further opportunity to explore the issue of petitioner’s competence in order to demonstrate, if it can, that the action taken was warranted. Since the present record is unsatisfactory, it might be desirable in any further investigation to utilize the services of a different expert or perhaps even a panel of experts to pass upon the question of petitioner’s capability. However, that is a matter to be resolved by the Authority and is within the scope of its powers. Certainly, before stigmatizing one as medically unqual *349 ified, care should be taken to assure an adequate and fair examination.
Accordingly, the judgment of the Appellate Division should be reversed, without costs, and the matter remitted to Special Term with a direction that the proceeding be remanded to the Authority for further proceedings in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones arid Wachtler ; Judge Rabin taking no part.
Judgment reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with opinion herein.